Clara Belle KRATZER, Appellant,

v.

Mrs. Ralph W. KING, Respondent.

No. 51450.

Supreme Court of Missouri,
Division No. 1.

March 14, 1966.

Motion to Transfer to Court En Banc or for
Rehearing Denied April 11, 1966.

Edward L. Simmons, Kansas City, for appellant.

William B. Waters, Robert E. Coleberd, Liberty, Hale, Coleberd, Kincaid & Waters, Liberty, of counsel, for respondent.

HIGGINS, Commissioner.

Action for $22,500 damages for personal injuries. Verdict and judgment were for defendant.

This case arose from an automobile collision which occurred August 23, 1961, in the uncontrolled intersection of East and Clinton Streets in Lathrop, Missouri. East Street is a north and south street 26 feet wide, sloping downhill northwardly prior to, at, and beyond the intersection; Clinton Street is an east and west street 34 feet wide, sloping uphill westwardly prior to, at, and beyond the intersection. Both streets are made of asphalt, and they were dry. Appellant was driving a 1959 Ford pickup truck north on East Street; respondent was driving a 1954 Ford automobile west on Clinton. The vehicles collided in the northeast quarter of the intersection, the front of respondent's car striking the middle of the right-hand side of appellant's truck. A state highway patrolman found debris at the east edge of the intersection in the middle of respondent's side of Clinton Street. There were skid marks which began just east of the debris and continued on west to respondent's car where it came to rest in collision with a dirt bank on the west side of the intersection. The pickup truck was turned over and appellant was thrown from it to her injury.

Appellant lived north of the intersection and was familiar with it and the house and large trees on the east side of East Street south of the intersection. Prior to the collision she was traveling approximately 20 miles per hour and she neither slowed nor slackened speed. She first saw respondent when "she was ready to hit me." She didn't recall whether she looked for traffic prior to that time, nor did she recall whether respondent was in the intersection when she first saw her. Appellant did not apply her brakes or sound her horn.

Respondent turned left onto Clinton Street from Highway 33 which runs north and south 100 yards east of East Street.

She accelerated to approximately 20 miles per hour and then reduced speed to about 10 miles per hour as she went up the grade to the intersection. When asked "how far east of the intersection does that grade get?" respondent answered, "Not quite half way." When her front wheels were in the intersection she first saw appellant 7 to 10 feet away, and she did not know how far appellant was into the intersection. She had her foot on the brake as she neared the intersection and applied the brake hard prior to the collision.

Appellant charges that the court erred in giving Instruction No. 10 on contributory negligence for failure to keep a careful lookout because "there was no evidence to show that even had she kept a careful lookout that she could have avoided the collision."

■ Instruction No. 10 is a proper submission of plaintiff's failure to keep a careful lookout as contributory negligence because it is MAI No. 28.01; and the only question is whether there is substantial evidence to support a reasonable inference that the plaintiff, charged with contributory negligence, had the means and ability to avoid the collision. Zalle v. Underwood, Mo., 372 S.W.2d 98, 102[1–3]; Miller v. St. Louis Public Service Co., Mo., 389 S.W.2d 769, 771–772[3, 4].

■ Our statement recites testimony from appellant from which the jury reasonably could have found that appellant did not look for traffic when approaching and entering the intersection and that she saw respondent only after reaching the northeast quarter of the intersection and just prior to impact. Exhibit D looks northeast from a point in East Street south of the intersection and shows two of the large trees and the house on the east side of the street. It also pictures a car parked on the south side of Clinton Street with its front end even with the corner of the house some two car lengths east of the east edge of East Street. It shows also that appellant could have seen traffic on Clinton Street for a distance of four or more car lengths (at least 60 feet) east of the east side of East Street, and it and Exhibit C show that the grade of Clinton Street was not such as to hide any cars from her view. Exhibit 4 pictured East Street looking north with the camera 250 to 300 feet south of the intersection and it, together with Exhibit D, showed that even from that distance one could see east on Clinton Street a distance of at least three car lengths east of the east edge of East Street. Respondent's speed on the upgrade approach was 10 miles per hour and her estimate of the length of the grade could be taken to mean that it ran east of the intersection for half the block between East Street and Highway 33, or a distance of 150 feet. When respondent entered the last 60 feet of her approach she was traveling 15 feet per second (10 m. p. h.) and it would take her four seconds to reach the east edge of East Street. Appellant was traveling at 30 feet per second (20 m. p. h.) and, at the beginning of the 4-second time period, would have been 120 feet south of the south edge of Clinton Street, a distance well within that in which she could see traffic on Clinton Street for at least the 60 feet mentioned. Under such circumstances, the question of appellant's contributory negligence was for the jury because a jury reasonably could find that had appellant looked and applied her brakes she could have stopped her truck within that 120 feet plus the 17' width of the south half of Clinton Street, or slackened her speed sufficiently to let respondent pass from appellant's right through the intersection without collision; likewise, the jury reasonably could infer that a warning at that time would have alerted respondent and that she could have stopped or slowed sufficiently to permit appellant to pass ahead. See Elliott v. Wescoat, Mo., 336 S.W.2d 649, 652; Eaves v. Wampler, Mo.App., 390 S.W.2d 922, 930[17, 18]; Loyd v. Moore, Mo.App., 390 S.W.2d 951, 956[9]. Hildreth v. Key, Mo.App., 341 S.W.2d 601, 607[10].

Appellant's case was submitted on the charge that defendant failed to yield the right of way using the form of MAI 17.01, and on the definition of "right of way" contained in MAI 14.02: "When two vehicles do not reach an intersection at approximately the same time, the vehicle which enters the intersection first has the right of way * * *." The court also gave Instruction No. 11 defining "right of way" as in MAI 14.03: "When two vehicles reach an intersection at approximately the same time, the vehicle on the right has the right of way * * *." Both of these definitions are "intended for use where there is a collision at intersecting highways and there are no traffic controls at the intersection." See Notes on Use following MAI 14.02 and 14.03.

Appellant charges error, however, in giving said Instruction No. 11 "for the reason that there was no evidence * * * that both vehicles entered the intersection at approximately the same time." Appellant argues that the evidence of collision in the northeast corner of the intersection, the damage to the right-hand side of her vehicle, and the debris at the east edge of East Street showed "it would clearly be impossible * * * for the two vehicles to have entered the intersection at the same time."

█ The evidence does not render "impossible" a finding that the vehicles entered the intersection at the same time, and there is evidence to justify the instruction. According to respondent, she first saw appellant when both were in the intersection. When respondent's front wheels were in the intersection she saw appellant 7 to 10 feet away to her left, and appellant did not know whether respondent's car was in the intersection when she first saw it. Appellant was going twice as fast as respondent and would have covered twice as much distance as respondent in the same time, a circumstance which would put appellant further into the intersection at collision, even though they may have entered the intersection at "approximately" the same time.

█ Appellant charges that the giving of Instruction 9, which told the jury not to consider the cost of any medical treatment given to her, was error, stating it "is clearly outside the issue, because nowhere was there any evidence of any medical expenses or treatment of any sort offered or received."

Appellant's transcript on appeal is abbreviated and it does not include the medical evidence. It is, therefore, insufficient for a development of this point. Brand v. Brand, Mo., 245 S.W.2d 94, 96[4].

Appellant's Point IV of Points Relied On is: "The court erred in failing to allow the highway patrolman to testify as to what plaintiff had stated to the highway patrolman that she had looked into the intersection and had attempted to avoid the collision but was unable to do so and that such failure * * * was prejudicial * * * in that this was a prior statement consistent with her position on direct examination that she had maintained a proper lookout. Said statement was contained in plaintiff's Exhibit No. 1 (Highway Patrol Accident Report) and was offered * * * after the cross-examination of plaintiff when she was confronted with the statement on her deposition that she did not remember looking to the right or left prior to entering the intersection.

"* * * such refusal was improper as the evidence showed that Mrs. Kratzer gave this statement at the doctor's office as soon as she regained consciousness and was therefore admissible."

█ This assignment preserves nothing for review because there is no citation of authority to support the contention and it is not carried forward and developed in any manner in the argument. Holt v. Queen City Loan & Inv., Inc., Mo., 377 S. W.2d 393, 400[13]; 3 Mo.Dig. Appeal & Error, █ Even so, the evidence

showed that any conversation between the patrolman and appellant took place in a doctor's office in the absence of respondent and nearly an hour after the accident. Under such circumstances, any statement in appellant's own interest would be clearly self-serving, hearsay and inadmissible.

■ Appellant's final point is Point V of Points Relied On: "The Court erred in failing to permit the highway patrolman to testify that when the two cars collided they left debris at the point of collision."

This point is also stated without authority and its development in argument is limited to a restatement. We note, however, that matters labeled Point IV in the argument portion of appellant's brief appear related to this point. Appellant there says that this is a subject of expert testimony; that because no objection was made to the qualifications of the patrolman, he should have been permitted to give such testimony as an expert, and the omission was prejudicial because the opinion was vital to the issue of who had the right of way.

In Hamre v. Conger, 357 Mo. 497, 209 S.W.2d 242, 249[10], we held it improper to permit a highway patrolman who investigated the accident to state, over objection, his opinion that the point of impact was the point where debris fell from colliding vehicles, because such is not a proper subject for expert or opinion evidence. We have adhered to that view since, Chester v. Shockley, Mo., 304 S.W.2d 831, 834[1], and the court did not err in refusing such testimony here.

The judgment is affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM.

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All concur.